UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NADIYA A. SALIH,

        Plaintiff,

v.

NANCY A. BERRYHILL,

        Defendant.

Case No. C17-554 TSZ

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Nadiya A. Salih seeks review of the denial of her application for supplemental security income. She contends the ALJ erred in rejecting the opinion of her treating physician, Manudeep Mahal, M.D. Dkt. 9. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Ms. Salih is currently 44 years old, is not able to communicate in English, and has worked as a child care attendant. Tr. 30. On June 10, 2013, she applied for benefits, alleging disability as of July 17, 2009. Tr. 19. Ms. Salih's application was denied initially and on reconsideration. Tr. 19. After the ALJ conducted a hearing on February 9, 2015, the ALJ issued a decision finding Ms. Salih not disabled. Tr. 19-32.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 1

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Ms. Salih has not worked since her application date.

**Step two:** She has the following severe impairments: degenerative disc disease, congenital spondylolysis of the lumbar spine, and obesity.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Ms. Salih can perform light work as defined in 20 C.F.R. § 416.967(b), further limited to occasional balancing, stooping, kneeling, and crouching; no climbing ladders, ropes, scaffolds, ramps, stairs; no crawling; no concentrated exposure to vibrations, pulmonary irritants, or hazards; and moderate noise intensity.

**Step four:** Ms. Salih cannot perform past relevant work.

**Step five:** Considering Ms. Salih's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform and thus she is not disabled.

Tr. 21-32. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.[3]

## DISCUSSION

**A.    Treating Physician Manudeep Mahal, M.D.**

Ms. Salih contends the ALJ erroneously rejected the opinions of her treating doctor, Dr. Mahal. The Court concludes the ALJ erred in discounting the treating physician's opinions because he overlooked or misinterpreted extensive clinical and laboratory findings supporting the opinions.

The Social Security Administration gives added weight to treating doctors' medical

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

opinions, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone…." 20 C.F.R. § 416.927(c)(2). Treating physicians' opinions must be given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" in the record. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007), quoting 20 C.F.R. § 404.1527. If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Orn*, 495 F.3d at 632, citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Even if contradicted, the treating doctor's opinion can only be rejected for "specific and legitimate" reasons supported by substantial evidence.[4] *Id.* "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

There is no dispute that Dr. Mahal is a long-term treating physician of Ms. Salih. At issue are three reports by Dr. Mahal, dated October 14, 2013, December 26, 2013, and October 23, 2014. Tr. 637-39, 554-568, 630-32. In all three reports, Dr. Mahal limited Ms. Salih from prolonged sitting, standing, and walking. Tr. 637, 555, 630.

**1. October 23, 2014 Report**

The ALJ reasonably accorded little weight to Dr. Mahal's most recent report, from

---

[4] Notably, the Commissioner does not argue that the opinion of non-examining physician Charles Wolfe, M.D., constitutes substantial evidence inconsistent with Dr. Mahal's opinion. When a physician relies on the same clinical findings as the treating physician but differs only in his or her conclusions, those conclusions are not "substantial evidence." *See Orn v. Astrue*, 495 F.3d at 632.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 3

October 23, 2014, because Ms. Salih was pregnant at the time, which likely exacerbated her back impairments and was not a permanent condition, and the report does not specify which parts of her impairments were chronic and which were due to pregnancy. Tr. 29.

### 2. December 26, 2013 Report

The report from December 26, 2013, is the most thoroughly documented of the three and includes records of Ms. Salih's course of treatment provided by Apple Physical Therapy. Tr. 554-69. Dr. Mahal opined that Ms. Salih could only walk half a mile without rest or severe pain, could sit for two hours at a time, could stand for 15 minutes at one time, could sit a total of two hours and stand or walk for less than two hours in an 8-hour work day, and would require a job that permitted shifting positions from sitting, standing, or walking at will. Tr. 555. Dr. Mahal opined that Ms. Salih would need unscheduled breaks every two to three hours of ten to fifteen minutes each. Tr. 556. Ms. Salih could only lift 10 pounds rarely, and would miss about three days per month due to her impairments or treatment. Tr. 556-57. Dr. Mahal diagnosed Ms. Salih with lumbosacral spondylolysis, degeneration of intervertebral disc, and chronic migraine. Tr. 554. Dr. Mahal endorsed objective signs including reduced range of motion, tenderness, muscle spasm, and impaired sleep. Tr. 555. Regarding Ms. Salih's pain, Dr. Mahal referred to "attached clinic notes." Tr. 554. The attached notes document Ms. Salih's course of treatment with Apple Physical Therapy. Tr. 561-68. Ms. Salih began physical therapy on October 8, 2013. Tr. 561. In her initial evaluation, Lauren VanDyken, DPT, PT, described Ms. Salih's problems as being unable to walk more than a quarter of a mile, unable to perform activities of daily living without rest breaks every two to three minutes, unable to perform sit to stand without increase in pain and needing to use her arms, limited in her range of motion, and unable to self-manage pain with home exercises. Tr. 561. Ms. Salih completed her course of physical therapy on December

12, 2013. Tr. 563. Even after two months of physical therapy and despite performing lumbar stretches and core stability exercises at home, Ms. Salih was unable to walk more than a few feet without an increase in pain, could only tolerate two to three minutes of washing dishes or doing laundry, still had increased pain when moving from sitting to standing, and still had a limited range of motion. Tr. 563. In her discharge report, Ms. VanDyken referred Ms. Salih back to her doctor because of Ms. Salih "wanting to end therapy and the lack of functional gains made." Tr. 563.

The ALJ provided two reasons to discount Dr. Mahal's December 26, 2013 opinion: that Dr. Mahal "had assistance from the claimant to complete the form" and Dr. Mahal "did not observe the exertional and postural limitations outlined [in the report] upon physical examination." Tr. 29. Neither reason is supported by substantial evidence in the record.

### a. Assistance from the Claimant

The first reason is simply a mistake. The ALJ cited a portion of the record that shows several telephone messages between Dr. Mahal and Apple Physical Therapy regarding completing paperwork documenting Ms. Salih's impairments. Tr. 592-94. In the three pages of telephone messages, there are three mentions of interaction with Ms. Salih: on November 21, 2013, Ms. Salih's attorney called on her behalf and said that Ms. Salih had "been waiting almost a month" for her forms; on December 27, 2013, *after the forms had been filled out* the office left a message (through an interpreter) for Ms. Salih to "call the office back regarding disability forms"; and finally, on January 6, 2014, that she "came to the office and picked up her forms." Tr. 594. There is no indication that Ms. Salih assisted Dr. Mahal in any way in filling out the forms. What the ALJ seems to be referring to is a notation on December 16, 2013, from Dr. Mahal, in response to a message asking "Please advise if forms can be filled out?" stating "Sorry

for the delay, received notes [from physical therapist] last week, need time to review[.] Hopefully need follow up appointment next week to answer few more question, to help me fill form." Tr. 593. The ALJ apparently assumed that Dr. Mahal needed an appointment *with Ms. Salih*, that such an appointment actually occurred, and that in such an appointment Ms. Salih assisted Dr. Mahal to fill out the forms. Neither the ALJ nor the Commissioner point to even a scintilla of evidence in the record for any one of these three assumptions. In hundreds of pages of medical records, at least one note about an appointment, which would have had to have taken place between December 16 and 26, 2013, is to be expected.

The Commissioner contends that "Dr. Mahal appeared to report Plaintiff's subject complaints" in the December 26, 2013 report. Dkt. 10 at 7. The Commissioner cites nothing in the record to support this vague claim that Dr. Mahal signed a report based not on her professional judgment but primarily on her patient's subjective complaints. The record provides no support for such a claim. Rather, the record shows that the report includes clinical diagnoses, positive objective signs, and documentation of treatment and results from several weeks of physical therapy. Tr. 554-68.

### b. Observation of Limitations

The ALJ's remaining reason for discounting Dr. Mahal's December 2013 opinion, that Dr. Mahal did not personally observe her exertional and postural limitations, is also in error. Doctors make clinical findings, and from those findings they infer, or opine, as to the patient's limitations. That Dr. Mahal did not observe Ms. Salih sit for two hours, for example, can hardly be a reason to discount her opinion that Ms. Salih was limited to two hours of sitting, when no doctor ever observes a patient sit for two hours. Indeed, if direct personal observation of a functional limitation were a requirement, then the opinions of a non-examining doctor would be

irrelevant, in violation of Social Security Administration regulations. *See* 20 C.F.R. §§ 416.902(a), 416.927(a)-(c) ("Acceptable medical source means a … [l]icensed physician…. Medical opinions are statements from acceptable medical sources…. [W]e will evaluate every medical opinion we receive"). And here, the ALJ accorded "great weight" to the opinion of non-examining doctor Charles Wolfe, M.D., who did not observe any of Ms. Salih's limitations directly. Tr. 29-30.

The Commissioner argues that the Court should interpret the ALJ's statement to mean that Dr. Mahal's opinion is based largely on Ms. Salih's self-report, and the ALJ found Ms. Salih less than fully credible.[5] Dkt. 10 at 8, citing *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim*, 763 F.3d at 1162, quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.* In *Ghanim*, the treating providers' opinions "discuss[ed] the providers' observations, diagnoses, and prescriptions, in addition to Ghanim's self-reports." *Id.* "[S]ome reliance by treating providers on Ghanim's self-reports [was] not an adequate evidentiary basis to reject the opinions of a treating physician or other treating providers." *Id.* at

---

[5] The Commissioner contends that Ms. Salih's credibility is an issue here, but Ms. Salih did not challenge the ALJ's assessment of her credibility, and the record shows Dr. Mahal's opinions are not more heavily based on Ms. Salih's self-reports than on clinical observations. Thus the Commissioner's arguments that Ms. Salih used opioid medication sparingly, and that in two emergency room visits she denied back pain, are irrelevant. Furthermore, side effects of dizziness and drowsiness (Tr. 555) and her doctor's advice to use opioids only "sparingly" (Tr. 317) support Ms. Salih's cautious use. Her poor command of English may explain her answers to emergency room personnel, especially because she sought help for emergencies unrelated to her back pain. Tr. 657, 664.

1162-63.

Here as well, Dr. Mahal's opinions are based on her own and other providers' observations, diagnoses, and prescriptions. In nearly a dozen examinations spanning a time period from April 2011 to January 2015,[6] Dr. Mahal's clinical observations of Ms. Salih's impairments included decreased range of motion in the spine, tenderness around the spine, and positive results bilaterally for straight leg raise tests. Tr. 403, 385, 374, 316, 336, 341, 508, 584, 749, 786. Dr. Mahal also referred to the results of a 2010 MRI, which showed "[p]rominent degenerative disc disease present at the L5-S1 level" as well as a "[p]ars interarticularis defect at L5 with an associated … spondylolisthesis at L5-S1…." Tr. 373-74; *see also* Tr. 496 (MRI interpreted by Dan Martin, M.D.). Dr. Mahal relied on extensive objective findings to support her opinions of Ms. Salih's impairments. As in *Ghanim*, the "ALJ offered no basis for his conclusion that these opinions were based more heavily on [the claimant's] self-reports, and substantial evidence does not support such a conclusion." 763 F.3d at 1162.

The Court concludes the ALJ erred in failing to provide specific and legitimate reasons, supported by substantial evidence in the record, to reject Dr. Mahal's December 2013 opinion. The error is harmful because the ALJ did not include all of Dr. Mahal's opined limitations in the RFC and thus may have included in step five jobs that Ms. Salih cannot perform. For example, the ALJ found that Ms. Salih had the RFC to perform light work, which includes lifting 20 pounds maximum and 10 pounds frequently. Tr. 24, citing 20 C.F.R. § 416.967(b). Dr. Mahal, however, opined that Ms. Salih could only lift 10 pounds rarely. Tr. 556. Dr. Mahal limited Ms. Salih to about two hours sitting and less than two hours standing or walking, while the RFC

---

[6] The last three assessments were performed after the December 2013 opinion and thus could not have informed it, but are consistent with the earlier ones and thus relevant to show the consistency of Ms. Salih's impairments and Dr. Mahal's clinical findings.

contained no limit on sitting, standing, or walking. Tr. 555; 24-25. The vocational expert testified at the hearing that a person limited to sitting two hours and standing or walking less than two hours could not sustain employment. Tr. 64. A person who required unscheduled breaks or who would be absent one day or more per month also could not sustain employment. Tr. 64-65.

### 3. October 14, 2013 Report

The ALJ also accorded little weight to Dr. Mahal's earliest opinion, from October 2013, on three grounds: (1) Ms. Salih "was consistently observed to have a good range of motion"; (2) Ms. Salih "was consistently observed to have … a normal gait"; and (3) "Dr. Mahal did not observe any abnormality or deficiency on physical examination that would warrant the [opined] limitations." Tr. 28.

#### a. Range of Motion

The ALJ's first reason is not supported by substantial evidence. The ALJ did not cite to the record to support the assertion that Ms. Salih consistently had a good range of motion and, in fact, the record shows the opposite. In nearly a dozen examinations spanning a time period from April 2011 to January 2015, Dr. Mahal documented a decreased range of motion in the spine. Tr. 403, 385, 374, 316, 336, 341, 508, 584, 749, 786. Other treatment providers did as well. In August 2013, spine surgeon Dawei Lu, M.D., examined Ms. Salih and reported "[p]ainful" range of motion. Tr. 504. In August 2014, Jennifer Jean Watters, P.T., observed "[s]ignificantly limited" range of motion in all planes. Tr. 800. In contrast, the Commissioner cites a single observation during an emergency room visit on December 5, 2013. Ms. Salih went to the emergency room because of vaginal bleeding, and was found to have miscarried her pregnancy. Tr. 662-665 ("fetal demise"). During the course of that visit, a physical examination showed a "[g]ood range of motion in all major joints." Tr. 665. This single instance cannot support the

ALJ's finding that Ms. Salih "consistently" had a good range of motion when repeated examinations over several years documented a reduced and painful range of motion. Substantial evidence does not support this reason to discount Dr. Mahal's opinion.

### b. Gait

The ALJ's second reason to dismiss Dr. Mahal's opinion was that Ms. Salih was "consistently observed to have … a normal gait." Tr. 28. Again, the ALJ again did not cite to the record to support this reason. The Commissioner cites instances where Dr. Mahal and her colleagues observed Ms. Salih to have a normal gait.[7] Tr. 374 (Dr. Mahal, January 5, 2012), 381 (Hilton A. Chen, M.D., September 23, 2011), 406 (Martha Ellis, P.A.-C., December 30, 2010). The Commissioner also cites observations from digestive health specialists that Ms. Salih sought help from regarding fecal incontinence. Tr. 536, 539, 542, 647, 650. Sleep specialists Ms. Salih was referred to for difficulty sleeping and possible sleep apnea also reported normal gait. Tr. 549, 551, 845. The Commissioner acknowledges that in other instances, treatment providers described Ms. Salih's gait as antalgic—reflecting pain. Ms. Salih consulted neurologist Peter S. Kwon, M.D., on June 3, 2014, regarding the possibility of back surgery to relieve her pain. Dr. Kwon observed Ms. Salih to have a somewhat antalgic gait and a stooped posture with walking. Tr. 713. On August 5, 2014, physical therapist Melinda L. Franklin, A.R.N.P., observed that Ms. Salih's "casual gait is antalgic. Balance is cautious." Tr. 803. Overall, the record of Ms. Salih's gait is mixed, not consistent. The ALJ did not weigh the evidence of Dr. Kwon's and Ms. Franklin's observations of Ms. Salih's gait and compare them to other medical source

---

[7] The Commissioner cites several records that appear to be duplicates, rather than independent records. *Cf.*, Tr. 341, 348, 474, 513. Another several citations actually reflect where Ms. Salih was directed to use the "heel and toe" gait and performed normally, but her ordinary walking gait was not noted. Tr. 341, 385, 508.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 10

observations. Rather, he provided only the conclusory statement that Ms. Salih "consistently" had a normal gait. Tr. 28; *see Stout*, 454 F.3d 1054 (ALJ's silent disregard of testimony constitutes error). In any event, a normal gait is neither a specific nor legitimate enough reason to reject the treating doctor's opinion here. A treating doctor's opinion is *controlling* if "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence." *Orn*, 495 F.3d at 631. Even if contradicted by another doctor, a treating doctor's opinion cannot be rejected without specific and legitimate reasons supported by substantial evidence in the record. *Id.* at 632. A gait that is sometimes observed to be normal and sometimes observed to be antalgic, standing alone, is not a specific and legitimate reason to reject all of Dr. Mahal's opined limitations.

### c. Observation of Limitations

The ALJ's third reason to discount Dr. Mahal's opinion is not supported by substantial evidence, as discussed above at pages 7-8. Dr. Mahal relied on extensive clinical and laboratory evidence in formulating her opinion. The Commissioner's brief reprises several pieces of evidence regarding variations in clinical findings by different providers at different times. Dkt. 10 at 5-6.[8] But it is not the Court's role to make independent findings regarding the medical evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2012) ("'we cannot rely on independent findings of the district court'"; quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *see also Treichler v. Comm'r. of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 ("we leave it to the ALJ to … resolve conflicts in the testimony, and resolve ambiguities in

---

[8] Some of the Commissioner's citations are incomplete or misleading. For example, regarding physical therapy in 2014, the Commissioner contends that Ms. Salih "tolerated the treatment well and noticed a decreased intensity of symptoms after the sessions…." Dkt. 10 at 6. In fact, after treatment that included moist hot packs applied to the back, Ms. Salih's symptoms decreased only for a couple of hours after the sessions before returning. Tr. 788-98.

the record"). The ALJ erred in discounting Dr. Mahal's opinion based on a lack of clinical observations.

The Court concludes the ALJ erred in rejecting Dr. Mahal's October 14, 2013 opinion. The error was harmful because the ALJ did not include all of Dr. Mahal's opined limitations in the RFC and thus may have included jobs that Ms. Salih cannot perform in the step five analysis.

On remand, the ALJ shall reevaluate Dr. Mahal's opinions in her December 26, 2013 and October 14, 2013 reports, and reassess Ms. Salih's RFC as appropriate.

**B.     Opinion of Charles Wolfe, M.D.**

The ALJ accorded great weight to the opinion of Dr. Wolfe that Ms. Salih is capable of light work with some limitations because his assessment was "consistent with the medical evidence of record." Tr. 29-30. However, as discussed above, the ALJ in several instances overlooked or misinterpreted the medical evidence. The ALJ also provided no explanation for why, despite according Dr. Wolfe's opinion great weight, he did not incorporate into the RFC Dr. Wolfe's limitations that Ms. Salih could not sit, stand or walk more than 6 hours in an 8-hour day and should work close to restroom facilities. *See* Tr. 30, 86. Accordingly, on remand the ALJ should reevaluate Dr. Wolfe's opinion, and reassess Ms. Salih's RFC as appropriate.

**C.     Scope of Review**

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. "Where ... an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 12

Here, the Court finds that not all essential factual issues have been resolved. There is conflicting medical evidence in the record and the record, as it stands, does not compel a finding of disability. Accordingly, remand for further proceedings is appropriate in this case.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ shall reevaluate Dr. Mahal's December 26, 2013 and October 14, 2013 opinions and Dr. Wolfe's opinion, and reassess Ms. Salih's RFC as appropriate.

DATED this 18th day of April, 2018.

Thomas S. Zilly
United States District Judge